# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY BOWEN, TONY KETTERLING, and CANYONS MANAGEMENT GROUP II, LLC, d/b/a RE/MAX ADVANTAGE,<br><br>Defendants. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:09-cv-00810-TC<br><br>Judge Tena Campbell |

In this declaratory judgment action, Continental Casualty Insurance Company (Continental) seeks a declaration that the professional errors and omissions insurance policy (the Policy) it issued to Defendant RE/MAX Advantage (RE/MAX) does not cover three state lawsuits[1] filed against its insureds. Continental claims that two separate exclusions in the Policy, the joint venture exclusion and the financial interest exclusion, exclude coverage. Because the court finds that disputed factual issues remain about the relationship of the parties and the transactions that are the basis of the lawsuits, the court DENIES summary judgment.

## BACKGROUND

**The Underlying Lawsuits**

Kimberly Bowen, a real estate agent connected to RE/MAX, acted as the real estate agent for both the buyers and sellers on lot purchases in the Fox Hollow subdivision in Saratoga

---

[1]The parties have referred to these lawsuits by the last names of the plaintiffs: Schmelzer, Baldwin and Besser. The court will do the same.

Springs (Fox Hollow). A company called "Mountain Lake Ventures" (Mountain Lake) sold the lots. Some purchasers also entered into agreements with another company, Empire Custom Homes, LLC (Empire), to have homes built on their lots. After the lots were sold, the purchasers learned that because no culinary or secondary water was available in Fox Hollow, Saratoga Springs would not issue building permits. Two of the three state lawsuits, the Schmelzer and the Baldwin lawsuits, arise out of these sales of Fox Hollow lots. These actions are pending in Utah State Court.

The Besser Plaintiffs, who live in California, brought their action in California. The lawsuit is based on their agreement with the Defendants, including RE/MAX, Kimberly Bowen, Mountain Lake and Empire, to purchase property near Park City, Utah, develop the property and sell it for a large profit. According to the Plaintiffs, once they gave their earnest money deposits to Defendants, Defendants stopped responding to any communications from Plaintiffs, including Plaintiffs' demands to return their money.

An acquaintance of Ms. Bowen, Sandra Chapple, started four of the companies involved in the transactions that figure in the lawsuits: Mountain Lake; Empire Custom Homes, LLC, and Empire Alliance;[2] Sterling Mountain Properties, Fox Hollow, LLC; and Sterling Mountain Properties, Deer Canyon, LLC (collectively "Sterling Mountain").

**Ms. Bowen's Admissions**

Ms. Bowen made a number of admissions, both to a law enforcement officer and in her deposition, that are significant here. She admitted that she loaned $80,000 to Sandy Chapple to start up Ms. Chapple's companies, primarily Empire. (Bowen Dep. 43-44.) Later, she took

---

[2]Empire Alliance is the sole member of Empire Custom Homes, LLC.

$120,000 from refinancing her home and loaned it to Ms. Chapple.  (Id.)  They signed no loan documents.  (Id. at 45.)  Ms. Bowen doesn't know exactly what Ms. Chapple did with her money, "I don't really know what my understanding [of how the money was used] was.  I just was giving Sandy [Chapple] the money; she was going to start these businesses."  (Id. at 44.)  She does know that her "startup capital" was used mainly for Empire.  (Id. at 43-44.)  Ms. Bowen personally bought computers for Ms. Chapple and Ms. Chapple's "different businesses."  (Id. at 45-46.)  Ms. Bowen also, at times, paid employees who worked for Ms. Chapple's businesses, primarily Empire. (Id. at 46.)  Ms. Bowen generally didn't know how Ms. Chapple was actually using the money she had given her; Ms. Chapple would tell her "[p]ay this bill. Pay that bill." (Id. at 71.)  Ms. Chapple agreed to repay Ms. Bowen $10,000 a month (id. at 57) and at the end "pay off the rest of [Ms. Bowen's] house" (id. at 83).

**The Policy**

The Policy defines "an insured" to include RE/MAX and "any person previously affiliated with [RE/MAX] as [a] partner, officer, director, employee or independent contractor." (Ex. A to Pl.'s Mem. Supp. § IV.)  Kimberly Bowen falls within that definition.

Continental claims that two exclusions exclude coverage, "the joint venture exclusion" and the "financial interest exclusion."  These exclusions read:

3

>     We will not defend or pay any **claim**: . . .
> I.  based on or arising out of the formation, syndication, operation or administration of any property syndication, real estate investment trust or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling, or maintaining real property; . . .
> L.  based on or arising out of the actual or attempted purchase of property by, or the actual or attempted sale, leasing or appraisal of property developed, constructed or owned by:
>    1. any entity in which any **Insured** has a financial interest; . . . .

(Id. § V.)

## ANALYSIS

The court grants summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

Continental argues that the Policy does not cover the Besser and Baldwin actions because the transactions involved in the underlying lawsuits were part of a joint venture. Continental additionally argues that the Policy does not cover the Schmelzer, Baldwin and Besser actions because Ms. Bowen had a financial interest in the companies involved in the transactions that are the basis of each of the underlying lawsuits.

"An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of the complaint." Benjamin v. Amica Mut. Ins. Co., 2006 UT 37, ¶ 16, 140 P.3d 1210 (quoting Fire Ins. Exch. v. Estate of Therkelsen, 2001 UT 48, ¶ 21, 27 P.3d 555). "The test is whether the complaint alleges a risk within the coverage of the policy." Therkelson, 2001 UT 48, ¶ 21 n.3 (citation omitted). "Professional liability insurance for real

estate agents and brokers is designed to cover risks involved in selling property for *others*; thus, such policies commonly exclude claims involving property owned by the insured or an entity in which the insured has a financial interest – *i.e.* where the broker or agent deals with her own inventory." Morris v. Emp'rs Reinsurance Corp., 101 Cal. Rptr. 2d 350, 352 (Ct. App. 2000) (interpreting a similar provision in a Continental Casualty insurance policy). In addition to considering the complaint, the court must also compare the policy provisions with the undisputed facts of the defendant's activities. Fire Ins. Exch. v. Alsop, 709 P.2d 389, 389-90 (Utah 1985).

"Where factual questions render coverage uncertain, . . . the insurer must defend until those uncertainties can be resolved against coverage." Benjamin, 2006 UT 37, ¶ 22. Further, "when there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage." Id. ¶ 25 (citation omitted).

**The Joint Venture Exclusion**

The Utah Supreme Court noted that

> The requirements for the [joint venture] relationship are not exactly defined, but certain elements are essential: the parties must combine their property, money, effects, skill, labor and knowledge. As a general rule, there must be a community of interest in the performance of the common purpose, a joint proprietary interest in subject matter, a mutual right to control, a right to share in the profits, and unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.

Rogers v. M.O. Bitner Co., 738 P.2d 1029, 1032 (Utah 1987) (citing Basset v. Baker, 530 P.2d 1, 2 (Utah 1974).

In a later decision, the Utah Supreme Court affirmed a decision by the court of appeals holding that summary judgment was not appropriate because an issue of fact existed on the question

5

of whether the parties had a joint venture relationship. The court cited the five elements of a joint venture enunciated in Basset, and stated above, and acknowledged that all elements were met except a duty to share in the losses. The court stated: "The duty to share losses . . . is a critical distinction between an investment-type relationship–in which the first elements may be present, but investors have no duty to share in the losses beyond the amount of their investment–and a joint venture relationship." Ellsworth Paulson Constr. Co. v. 51-SPR-L.L.C., 183 P.3d 248, 253 (Utah 2008). The court stressed that "the party asserting the existence of a joint venture must present some evidence of loss sharing." Id.

Even though the Besser complaint alleges a joint venture, the complaint does not allege that Ms. Bowen would be responsible for any losses if the venture failed. Moreover, Continental has presented no evidence of an intent among those involved in the transaction to share losses. In fact, Continental has presented scant evidence of exactly what the agreement was between Ms. Bowen and the other parties in any of the transactions. For that reason, the court concludes that factual issues preclude the granting of summary judgment on the question of whether the joint venture exclusion bars coverage.

**The Financial Interest Exclusion**

The Policy does not define a "financial interest." When a term is not defined in an insurance contract, the court must decide "the definition which is properly applicable to the particular factual situation, taking into consideration what [the court] believe[s] to be the popular non-technical understanding of the term." LDS Hosp. v. Capitol Life Ins. Co., 765 P.2d 857, 861 (Utah 1988) (citations omitted); see also 2 COUCH ON INSURANCE § 22:38 (3d ed. 2010) ("words in insurance policies are to be construed using their ordinary and popular meanings").

Black's Law Dictionary defines a financial interest as, "An interest involving money or its equivalent; [especially] an interest in the nature of an investment." BLACK'S LAW DICTIONARY 885 (9th ed. 2009). Although an ownership interest in an entity would certainly be considered a financial interest in that entity, ownership is not necessary to have a financial interest. See JAM Inc. v. Nautilus Ins. Co., 128 S.W.3d 879, 895 (Mo. 2004). One court has defined financial interest to mean "either (1) a monetary right, title, or legal share in the property; (2) a monetary advantage, profit, and responsibility, i.e., a monetary stake or claim in the property; or (3) a monetary share of ownership or control in the property." Id. at 894. Continental claims that Ms. Bowen's $200,000 loan to Ms. Chapple gave her a financial interest in all Chapple-related entities and a financial interest in the transactions.

But the record is unclear about what was done with Ms. Bowen's money except that some definitely went to Empire. Ms. Bowen's testimony does not show what was done with the rest. Throughout her deposition, Ms. Bowen testified that she really didn't know how Ms. Chapple used the loan money. For example, when asked whether she loaned money to Empire or Sterling Mountain, Ms. Bowen answered: "I'm not sure because I did loan money. But who specifically it went to, I'm not sure." (Bowen Dep. 15.) Later in her deposition, in response to a question about what she understood Ms. Chapple did with Ms. Bowen's money, Ms. Bowen stated: "I don't really know what my understanding was. I just was giving Sandy [Chappel] the money; she was going to start these businesses." (Id. at 44.)

On the record before it, the court cannot find as a matter of law that Ms. Bowen had a financial interest in the transactions.

CONCLUSION

The court denies Continental Casualty's motion for summary judgment because disputed issues of fact remain on whether the joint venture and financial interest exclusions bar coverage.

DATED this 21st day of January, 2011.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge